UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-10937
Summary Calendar

_____

THOMAS CYR; KEVIN CAPPER,

Plaintiffs-Appellants,

versus

CITY OF DALLAS, TEXAS; DALLAS POLICE DEPT.;
ROBERT JACKSON, Interim Dallas Police; GRANVER
TOLLIVER, Deputy Chief, Commander of the Dallas
Police Department Special Operations Bureau,
Tactical Division; RICHARD GARCIA, Sergeant,
individually and in his official capacity as a
Dallas Police Officer; HERBERT W. PARKER,
Senior Corporal, individually and in his official
capacity as a Dallas Police Officer; JOSEPH
R. MAINES, individually and in his official
capacity as a Dallas Police Officer; DOUG
KOWALSKI, Captain, individually and in his
official capacity as a Dallas Police Officer,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Texas
(3:95-CV-774-P)

_____

April 3, 1997

Before SMITH, DUHÉ, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Thomas Cyr and Kevin Capper appeal the adverse summary

judgment in in their 42 U.S.C. § 1983 excessive force action.  We

**AFFIRM**.

_____

[*]     Pursuant to Local Rule 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in Local Rule
47.5.4.

On 27 February 1993, Cyr and Capper, with approximately 40 others, were involved in a demonstration at the North Dallas Women's Clinic. The clinic director contacted the Dallas police because the protestors were blocking the doorway to the clinic, were walking around inside the clinic, shouting at patients and staff, and were stealing and destroying surgical equipment and endangering patients. Officers Maines and Parker arrested Cyr and Capper for criminal trespass after they refused to leave the clinic.

After being arrested, both Cyr and Capper dropped to the floor and refused to stand and walk out of the clinic. Officers Parker and Maines handcuffed Cyr and Capper, but both refused to stand and walk. When pain compliance techniques were unsuccessful, the Officers warned Cyr and Capper that peppermace would be used. Cyr and Capper failed to heed those warnings. Officer Parker administered a short burst of mace to Capper's head; when he still did not comply, the Officers carried him outside. Officer Maines administered a burst of mace that struck Cyr on the top of his head, and a second burst to Cyr's face. When the mace proved ineffective, three Officers carried Cyr outside.

Cyr and Capper filed complaints with the Dallas Police Department (DPD), which initiated an internal investigation. The Internal Affairs division found that Parker and Maines' use of mace on the handcuffed abortion protestors was unnecessary and issued

written reprimands.  After the incident, the DPD instructed its Officers not to use mace when dealing with passive resisters.

Prior to the incident, DPD had trained its Officers on the use of peppermace, but not concerning passive resistance.  Peppermace had been authorized as a technique used after pain-compliance techniques but before the baton when dealing with resistance to arrest.

Cyr and Capper filed suit against the City, the Chief and Deputy Chief of the DPD, and the arresting Officers, claiming, *inter alia,* that the use of mace constituted excessive force, and that the Officers were not adequately trained and supervised.  The district court granted summary judgment for the defendants, holding that the arresting Officers were entitled to qualified immunity. The district court granted summary judgment on the claims against the City and the Officers in their individual capacities because, absent a constitutional violation, the plaintiffs were precluded from establishing that the City had adopted a policy which resulted in the deprivation of their civil rights.

## II.

The appellants contend that the district court applied incorrect legal standards; that the individual appellants  are not entitled  to  qualified  immunity  because  their  actions  were objectively unreasonable; and that the district court erred by granting summary judgment on their failure to train/supervise claims because the appellees admitted that the Officers were not trained on the use of peppermace in a passive resistance situation.

## A.

The district court did not apply an incorrect summary judgment standard by drawing inferences from undisputed facts. Contrary to the appellants' assertions, whether the appellees' conduct was objectively unreasonable in light of the clearly established law at the time the conduct occurred is a legal, not factual, issue. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818-19(1982). And, the contention that the court erroneously relied on the "significant injury" requirement for excessive force claims is without merit, because the district court did not apply that standard.

## B.

We apply the well-known two-part analysis in addressing qualified immunity claims: (1) whether the plaintiffs alleged the violation of a clearly established constitutional right; and (2) whether the defendants' conduct was objectively reasonable when examined by reference to clearly established law. *E.g., Siegert v. Gilley*, 500 U.S. 226, 231(1991); *Duckett v. City of Cedar Park, Tex.,* 950 F.2d 272, 279-80 (5th Cir. 1992).

## 1.

The appellants satisfied the first part of this analysis. A claim that law enforcement officers used excessive force during an arrest is sufficient to allege a violation of the Fourth Amendment's prohibition against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394(1989).

2.

We agree with the district court, however, that the Officers' actions were objectively reasonable in light of the facts and circumstances surrounding them. It was not clearly established in February 1993 that the use of mace on handcuffed passive abortion protestors constituted excessive force. As the district court noted, although the appellants were not aggressively resisting arrest, they were intentionally making the arrest procedure extremely difficult by refusing to leave the clinic. The atmosphere at the clinic was one of chaos and disorder; the protestors, who outnumbered the Officers, were dispersed throughout the clinic, frightening patients and staff. Capper had tried to crawl through a receptionist's window into the clinic's business office; when prevented from doing so, he confronted some patients in the waiting room about unborn babies. He tried to grab a female patient's hand, and a shoving match ensued when her male companion tried to stop him. Cyr was in the main hallway of the clinic, blocking the entrance to a surgical room and shouting at a patient in need of medical attention, who had locked herself inside the room and was screaming for help. Moreover, having been told that some of the protestors had stolen surgical equipment, the Officers reasonably could have feared that Cyr and Capper might have armed themselves with such equipment.

Needless to say, the reprimands given Parker and Maines do not establish that they acted unreasonably. The reprimands were issued after an investigation conducted with the benefit of hindsight.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Id*. at 396-97.

C.

Finally, we affirm the summary judgment on the failure to train and lack of adequate supervision claims essentially for the reasons stated by the district court. *Cyr v. City of Dallas*, No. 3:95-CV-0774-P (N.D. Tex. July 2, 1996) (unpublished).

III.

For the foregoing reasons, the judgment is

*AFFIRMED.*